**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

SHARON MURRAY,                          1:19-cv-20920-NLH-AMD

           Plaintiff,          **OPINION**

   v.

JOHN WOOD COMMUNITY COLLEGE,

         Defendant.

---

**APPEARANCES:**

SHARON MURRAY
1206 W. CORNELL ST.
VINELAND, NJ 08360

     Plaintiff appearing *pro se*

BRYAN ANTHONY SMALL
KEVIN RICHARD GARDNER
CONNELL FOLEY LLP
56 LIVINGSTON AVENUE
ROSELAND, NJ 07068

     On behalf of Defendant

**HILLMAN, District Judge**

     In this matter that concerns claims of breach of contract against a community college, pending before the Court is Defendant's motion to dismiss the matter for lack of personal jurisdiction.[1]  For the reasons expressed below, Defendant's

---

[1] Defendant has also moved to dismiss for improper service, or to dismiss or transfer for improper venue.  Because the Court finds that personal jurisdiction is lacking over Defendant, the Court

motion will be granted, and the matter will be transferred to the U.S. District Court for the Central District of Illinois.

**BACKGROUND**

Plaintiff, Sharon Murphy, appearing *pro se*, attended John Wood Community College ("JWCC"), a two-year public college located in Quincy, Illinois,[2] from 1996 through 1998 for the practical nursing program.  Plaintiff claims JWCC issued her a nursing assistant certificate in May 1998, and she completed all the requirements for the practical nursing program in December 1998, when she graduated from the program.  Plaintiff claims that in March 1999 JWCC refused to issue her diploma because she owed money for books.

At some unspecified time thereafter, Plaintiff paid for the books, but she claims that JWCC still refused to issue her diploma because she had not successfully completed the prerequisite class English 101.  Plaintiff claims that she had taken English 101 at JWCC and received a B.

Plaintiff claims that on June 4, 2012, JWCC agreed that if

---

will not consider the other arguments raised in Defendant's motion.

[2] JWCC is a public body founded pursuant to the Illinois Public Community College Act, 110 ILL. COMP. STAT. 805, et seq., to provide post-secondary education for residents of Illinois Community College District No. 539, with its main campus located in Quincy, Illinois.

she retook English 101 and transferred the credits to JWCC, it would issue her diploma.  Plaintiff relates that she completed, and received an A in, English 101 at ITT-Technical Institute in the fall of 2012.  Plaintiff transferred the credits to JWCC, but Plaintiff claims that during two phone calls in March 2013 and November 2013, JWCC informed her that it would not accept the transfer because ITT-Technical Institute did not have the proper accreditations.  Plaintiff further claims that JWCC did not accommodate a disability at the time arising from eye surgery.

Plaintiff claims that in January 2018, she called JWCC to inquire about her ability to obtain her diploma.  Plaintiff claims that JWCC again informed her that she needed to complete English 101 from a properly accredited institution.  Plaintiff claims that in the spring of 2018 she completed English 101 at Cumberland County Community College in New Jersey.  Plaintiff claims that "[on] July 11, 2019 Defendant advise[d] Plaintiff they have decided not to honor their end of the contract agreement again, nor will they refund the thousands of dollars." (Docket No. 1 at 12.)  Plaintiff contends that JWCC failed to inform her of "a newly enacted unwritten policy of theirs that would have required Plaintiff to complete the English 101 course

within 5 years."[3]   (Id. at 17.)

In her complaint, Plaintiff has asserted the following claims against JWCC: five counts of breach of contract, one count of constructive fraud, one count of breach of fiduciary duty, one count of actual fraud, and one count of negligence. Plaintiff seeks $954,320, "[w]hich is $34,320 in tuition and fees to retake program courses.  Materials and equipment approximately $20,000.  Loss of income of $1,000,000.  Minus mitigating measures of approximately $100,000."  (Id. at 18.)

JWCC has moved to dismiss Plaintiff's claims against it for lack of personal jurisdiction.  In the alternative to dismissal, JWCC seeks to have the case transferred to the Central District of Illinois.  Plaintiff has opposed JWCC's motion.

---

[3] For further background, JWCC explains that when Plaintiff contacted JWCC in 2018 seeking to obtain her practical nursing certificate by completing the course requirements that had existed in 1996, JWCC informed Plaintiff that because of changes to the practices, procedures, and standards applicable to the nursing profession in Illinois and the state licensing requirements for such profession, the curriculum that was in place when Plaintiff last attended JWCC was outmoded.  JWCC further explains that JWCC's academic policies at the time Plaintiff enrolled, as outlined in JWCC's Student Handbook, required that a student complete any technical course for certificate/degree completion within five years of the then current term.  Because the 1996 curriculum would not satisfy the current requirements for professional licensure in Illinois, Plaintiff was informed she would need to complete the current curriculum requirements of the practical nursing program.

## DISCUSSION

### A.    Subject matter jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  Plaintiff is a citizen of New Jersey.  Defendant is a citizen of Illinois.

### B.    Standard for Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant.  "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  A Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." Patterson by Patterson v. F.B.I., 893 F.2d 595, 603-04 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61 n.9 (3d Cir.1984)) (quotations and other citations omitted).  "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent

evidence." Id.  "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction," and "[o]nce the motion is made, plaintiff must respond with actual proofs, not mere allegations." Id.

A defendant is subject to the jurisdiction of a United States district court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A).  "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)(citations omitted).  The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981)).

Under the Due Process clause, the exercise of personal jurisdiction over a non-resident defendant is appropriate when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting

6

Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  A defendant establishes minimum contacts by "'purposefully avail[ing] itself of the privilege of conducting activities within the forum State,'" thereby invoking "'the benefits and protections of [the forum State's] laws.'"  Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  This "purposeful availment" requirement assures that the defendant could reasonably anticipate being haled into court in the forum and is not haled into a forum as a result of "random," "fortuitous" or "attenuated" contacts with the forum state.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475 (internal citations omitted).

In deciding whether a defendant's contacts with a forum are sufficient to confer personal jurisdiction over that party, the Court must consider whether such contacts are related to or arise out of the cause of action at issue in the case.  The Court may exercise specific personal jurisdiction over a defendant where the cause of action is related to or arises out of activities by the defendant that took place within the forum state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).  If the cause of action has no

relationship to a defendant's contacts with a forum state, the Court may nonetheless exercise general personal jurisdiction if the defendant has conducted "continuous and systematic" business activities in the forum state.  Id. at 416.

Once the Court determines that the defendant has minimum contacts with the forum state, it must also consider whether the assertion of personal jurisdiction over the defendant "comport[s] with 'fair play and substantial justice'" to satisfy the due process test.  Burger King Corp., 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).  In this regard, it must be reasonable to require the defendant to litigate the suit in the forum state, and a court may consider the following factors to determine reasonableness: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining an efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.  Id. at 477 (citing World Wide Volkswagen, 444 U.S. at 292).

In the case of an intentional tort, the "effects test" is applied.  The Calder "effects test" requires the plaintiff to show the following:

(1) The defendant committed an intentional tort;
(2) The plaintiff felt the brunt of the harm in the forum
such that the forum can be said to be the focal point of
the harm suffered by the plaintiff as a result of that
tort;
(3) The defendant expressly aimed his tortious conduct at
the forum such that the forum can be said to be the focal
point of the tortious activity.

IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265–66 (3d

Cir. 1998) (discussing Calder v. Jones, 465 U.S. 783 (1984))).

"[I]n order to make out the third prong of this test, the

plaintiff must show that the defendant knew that the plaintiff

would suffer the brunt of the harm caused by the tortious

conduct in the forum, and point to specific activity indicating

that the defendant expressly aimed its tortious conduct at the

forum."  Id.

**C.  Analysis**

JWCC argues the Court lacks personal jurisdiction over it

because JWCC has no purposeful contacts with New Jersey

sufficient to establish specific or general jurisdiction.  JWCC

argues that it is an Illinois public college which Plaintiff

attended in Illinois in 1996-1998, and its only contact with New

Jersey relative to Plaintiff is its correspondence with

Plaintiff which she initiated regarding the requirements to

award her a diploma.

Plaintiff argues that JWCC has sufficient contacts with New

Jersey because of its website, which informs out-of-state

9

students that they can attend online classes at JWCC.  Plaintiff also argues the JWCC knew Plaintiff resided in New Jersey when she spoke with them, and JWCC agreed that Plaintiff could take the English 101 class in New Jersey and transfer the credits.

Thus, Plaintiff's proffered proof to show JWCC's contacts with New Jersey consists of: (1) JWCC's website, which contains information as to how students who do not live in Illinois may take classes online at JWCC; (2) her communications with JWCC, with her calling and writing JWCC in Illinois, and presumably JWCC responding to Plaintiff from Illinois to New Jersey; and (3) JWCC's awareness that Plaintiff resided in New Jersey.  The Court finds that Plaintiff has not met her burden of proof to provide the requisite jurisdictional facts to establish personal jurisdiction over JWCC under any of the applicable tests.

First, with regard to JWCC's website, generally applicable passive information on an educational institution's website available to view by anyone in any place does not constitute "purposeful availment" of business activities in, or such "continuous and systematic" contacts with, the forum state as to confer *in personam* jurisdiction.  See, e.g., Christie v. National Institute for Newman Studies, 258 F. Supp. 3d 494, 508 (D.N.J. 2017) (discussing Severinsen v. Widener Univ., 338 N.J. Super. 42, 51–52, 768 A.2d 200 (App. Div. 2001)) (explaining how in

Severinsen, the plaintiff sued Widener University, a Delaware
entity, in New Jersey, arguing that although he was injured in a
university dormitory in Delaware, the university's advertising
provided New Jersey with general personal jurisdiction, and the
court disagreed, reasoning, "'educational institutions typically
draw their student body from numerous states, and [the
plaintiffs'] theory would subject them to suit on non-forum
related claims in every state where a member of the student body
resides,'" quoting Gehling v. St. George's School of Medicine,
Ltd., 773 F.2d 539 (3d Cir. 1985)); see also id. (quotations
omitted) (further explaining that although college recruitment
activities involve some advertising and random contacts with New
Jersey, that activity is too remote to justify the exercise of
general jurisdiction, and "traditional notions of fair play and
substantial justice strongly militate against holding that a non-
profit educational institution renders itself subject to service
of process in every state of the union from which it may seek or
attract outstanding athletes or scholars'"); Pinninti v. NRI
Medical College (NRIAS), 2010 WL 2483992, at *8 (D.N.J. 2010)
(explaining that the plaintiffs failed to show that the website
of a medical college located in India was specifically targeted
to potential applicants in New Jersey, and noting that providing
information, and even responding to inquiries, "falls short of

11

constituting the 'something more' necessary to demonstrate
purposeful availment," and awareness that the NRIAS website could
be accessed from New Jersey and that New Jersey residents might
apply for admission after viewing the information on
the website "does not mean that [NRIAS] purposefully directed
[its] activities at residents of" New Jersey or purposefully
availed itself of doing business with New Jersey citizens)
(citing Kloth v. So. Christian Univ., 494 F. Supp. 2d 273, 279
(D. Del. 2007) (finding that the university's website could not
serve as a basis for specific jurisdiction); Tocci v. Antioch
Univ., No. 07-1341, 2007 WL 2362592, at *3 (D.N.J. 2007) (same)).

    Here, the information on JWCC's website explains that JWCC
is a member of the National Council for State Authorization
Reciprocity Agreement, and that membership allows out-of-state
students from fellow NC-SARA participating states to complete
online and hybrid coursework and programs at JWCC.  See
https://www.jwcc.edu/programs/online-learning/out-of-state-
students/.  Simply because a New Jersey resident could view this
information and choose to take online classes at JWCC does not
mean that JWCC specifically targeted Plaintiff,[4] or any other New

---

[4] Plaintiff does not allege that she chose to attend JWCC because
of its marketing on JWCC's website such that the website could
be construed to have specifically targeted Plaintiff in New
Jersey.  The Court recognizes that Plaintiff first attended
college at JWCC in 1996-1998, and that even if JWCC had a

Jersey resident, in New Jersey, or that JWCC has a continuous and systematic presence in New Jersey.  JWCC's website does not serve as a basis for personal jurisdiction over JWCC in this Court.

Plaintiff's second and third purported pieces of evidence of JWCC's contacts with New Jersey are similarly deficient, either alone or in combination with the other proffered evidence.  It appears undisputed that JWCC was aware of Plaintiff's residency in New Jersey, and that JWCC communicated with Plaintiff while she was in New Jersey.  Those interactions with Plaintiff that were initiated by Plaintiff regarding the education she received at JWCC in Illinois fail to establish that JWCC: (a) purposefully availed itself of the privilege of conducting activities within in New Jersey sufficient to invoke the benefits and protections of New Jersey law (specific jurisdiction), (b) had generally conducted continuous and systematic business activities in the New Jersey (general jurisdiction), or (c) expressly aimed its allegedly tortious conduct to New Jersey (Calder effects test).  See, e.g., Pinninti, 2010 WL 2483992, at *8 ("The contract between Meena and NRIAS in which Meena paid tuition in exchange for a seat in

---

website at that time, JWCC most likely did not offer online classes.  Plaintiff also does not explain where she lived in 1996-1998, but it appears that Plaintiff resided in Illinois when she attended college there.

the NRIAS medical college came about as a result of the
plaintiffs' unilateral actions.  The plaintiffs [Meena's
parents] called Dr. Mukkamala to inquire about admission, the
plaintiffs emailed Dr. Mukkamala to inform him that Meena had
applied, and the plaintiffs sent the completed application and
full tuition payment to the Michigan address.  All of the
actions taken by Dr. Mukkamala on behalf of NRIAS directed to
the plaintiffs in New Jersey, such as Meena's acceptance letter,
were in response to actions of the plaintiffs and occurred in
Michigan.  This is insufficient to make the requisite showing
that NRIAS purposefully avail[ed] itself of the privilege of
conducting activities within the forum." (citing Tocci, 2007 WL
2362592, at *4 (declining to impose specific jurisdiction where
the defendant university "was merely responding to actions taken
by" the plaintiff)) (other citations omitted); see also Isaacs
v. Arizona Bd. of Regents, 608 F. App'x 70, 76 (3d Cir. 2015)
(where the plaintiff, who lived in Pennsylvania, sued Dartmouth
College, located in New Hampshire, in Pennsylvania regarding his
termination from a psychiatry residency, affirming the district
court, which found that even though Dartmouth College recruits
athletes and faculty in Pennsylvania, and targets highly-
qualified Pennsylvania high school students through emails and
its website and admits them, among other similar things,

these *de minimis* contacts, which any national university may
have, do not relate to the allegations in the plaintiff's
amended complaint and are insufficient to
establish personal jurisdiction in the Eastern District of
Pennsylvania, and further to the extent that the plaintiff was
harmed, Pennsylvania was not the focal point of the harm, nor
did Dartmouth College expressly aim tortious conduct at
Pennsylvania").

In sum, Plaintiff attended JWCC in Illinois and
unilaterally contacted JWCC over the years regarding her
education at JWCC in Illinois.  Plaintiff's choice of residence
after her attendance at an Illinois college and Plaintiff's
unilateral communications with an Illinois college over the
years does not, without more, establish personal jurisdiction
over JWCC.  Plaintiff has failed to meet her burden of
establishing personal jurisdiction over JWCC in New Jersey.

At this juncture, the Court must decide whether to dismiss
Plaintiff's complaint or transfer it to another court that may
exercise personal jurisdiction over JWCC.  The applicable
statutory provision is 28 U.S.C. § 1631, which governs transfer
when there is "a want of jurisdiction."  See Chavez, 836 F.3d at
224 (explaining that where a court determines that personal
jurisdiction over the defendants is lacking, the determination

15

of whether to dismiss or transfer is governed by 28 U.S.C. §

1631 and not 28 U.S.C. § 1406(a), which concerns improper

venue).  Section 1631 provides in relevant part:

> [Where a] court finds that there is a want of jurisdiction,
> the court shall, if it is in the interest of justice,
> transfer such action or appeal to any other such court . .
> . in which the action or appeal could have been brought at
> the time it was filed or noticed, and the action or appeal
> shall proceed as if it had been filed in or noticed for the
> court to which it is transferred on the date upon which it
> was actually filed in or noticed for the court from which
> it is transferred.

28 U.S.C. § 1631 ("Transfer to cure want of jurisdiction").

In this case, JWCC concedes that personal jurisdiction

exists over it in the U.S. District Court for the Central

District of Illinois.  The Court does not find any factors that

compel the harsh result of dismissal rather than transfer.[5]  See,

---

[5] In her opposition to JWCC's motion, Plaintiff argues that the
transfer of her case to Illinois would "create a substantial
burden and hardship on the Plaintiff, in turn denying her right
to a fair process."  (Docket No. 7 at 4.)  The Court recognizes
that Plaintiff's residence in New Jersey and her pro se status
may cause her inconvenience, but the focus of the personal
jurisdiction analysis is the fairness to the defendant - not the
plaintiff.  See, infa, Burger King Corp., 471 U.S. at 476.  If
Plaintiff does not wish to pursue her claims against JWCC in
Illinois, she may avail herself of Fed. R. Civ. P. 41(a)(1)
(regarding voluntary dismissal by a plaintiff).  The Court notes
that Plaintiff relates that she "is very willing to resolve the
matter without the court, if the Defendant is also willing to
resolve the matter."  (Docket No. 7 at 4.)  Lacking
jurisdiction, this Court will not compel mediation which the
parties are free to pursue on their own or as directed by the
transferee court.

e.g., <u>Chavez</u>, 836 F.3d at 224 (affirming the district court's finding that the defendant was not "at home" in Delaware under general jurisdiction, but reversing the district court's dismissal, rather than transfer, of the action, finding that the interests of justice supported transfer, particularly when the plaintiff sought transfer to New Jersey in the event that the district court determined that personal jurisdiction was lacking in Delaware). Consequently, the Court will transfer the action to the Central District of Illinois.

<u>**CONCLUSION**</u>

For the reasons expressed above, the Court finds that personal jurisdiction over JWCC for Plaintiff's claims against it is lacking. The Court will transfer the case to the U.S. District Court for the Central District of Illinois.

An appropriate Order will be entered.


Date: <u>August 12, 2020</u>      <u>s/ Noel L. Hillman</u>
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.